## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

ALEXANDER OMAR VALDES
AS PERSONAL REPRESENTATIVE
FOR THE ESTATE OF TERESA VALDES,

       Plaintiff,

v.

BOEHRINGER INGELHEIM
PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM
CORPORATION; BOEHRINGER
INGELHEIM USA CORPORATION;
PFIZER INC.; SANOFI-AVENTIS U.S.
LLC; SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS
(AMERICAS) INC.; and PUBLIX SUPER
MARKETS, INC.

       Defendants.

Case No.: 1:23cv24748

## <u>NOTICE OF REMOVAL</u>

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants GlaxoSmithKline LLC,

GlaxoSmithKline Holdings (Americas) Inc., Pfizer Inc., Boehringer Ingelheim Pharmaceuticals,

Inc., Boehringer Ingelheim Corporation, Boehringer Ingelheim USA Corporation, Sanofi US

Services Inc., and Sanofi-Aventis U.S. LLC (collectively, "Removing Defendants") hereby give

notice of removal of this action, captioned *Valdes v. Boehringer Ingelheim Pharmaceuticals, Inc.*,

No. 2021-021945, from the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade

County, Florida to the United States District Court for the Southern District of Florida, Miami

Division.  As grounds for removal, the Removing Defendants state as follows.

## PRELIMINARY STATEMENT

1.      This action is one of thousands of individual lawsuits filed against manufacturers,

distributors, and sellers of Zantac (ranitidine) or its generic equivalents, alleging that use of the

medication can cause cancer.  On February 6, 2020, the Judicial Panel on Multidistrict Litigation

("JPML") created a multidistrict litigation ("MDL") in the Southern District of Florida for pretrial

coordination of cases like this one—*i.e.*, cases "in which plaintiffs allege that they developed

cancer as a result of N-Nitrosodimethylamine ("NDMA") formed from Zantac."  *In re Zantac*

*(Ranitidine) Prods. Liab. Litig.*, 437 F. Supp. 3d 1368, 1369 (J.P.M.L. 2020).  The JPML found

that centralizing these cases for pretrial purposes "will eliminate duplicative discovery; prevent

inconsistent rulings . . . and conserve the resources of the parties, their counsel, and the judiciary."

*Id.*  To date, thousands of actions have been transferred to or filed in the Zantac MDL.

2.      Plaintiff Alexander Omar Valdes, as personal representative for the estate of Teresa

Valdes ("Decedent"), brings this lawsuit against the Removing Defendants—the entities that

manufactured and/or marketed Zantac—and Florida retailer Publix Super Markets, Inc. ("Publix")

in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

Plaintiff, like countless others in the MDL, alleges that Decedent ingested ranitidine-containing

products and, as a result, developed cancer.

3.      The Eleventh Circuit previously explained that "[t]he removal process was created

by Congress to protect defendants.  Congress 'did not extend such protection with one hand, and

with the other give plaintiffs a bag of tricks to overcome it.'"  *Legg v. Wyeth*, 428 F.3d 1317, 1325

(11th Cir. 2005).  The Removing Defendants remove this case because, with discovery now closed,

it has become abundantly clear that Plaintiff named non-diverse defendant Publix in bad faith for the sole purpose of defeating diversity jurisdiction.

4. Plaintiff's Fourth Amended Complaint ("FAC") (**Exhibit 1**) alleges that Publix was negligent in "shipping, transporting, distributing, and storing OTC Zantac." (FAC ¶ 262.) But Plaintiff failed to proffer any expert witness to support such a negligence claim against Publix: each of Plaintiff's medical experts, in fact, expressly *disclaimed* having any opinion as to the retailer. Without expert testimony, Plaintiff cannot recover against Publix.

5. Plaintiff has no real intent to pursue his claim against Publix to judgment. Not only did Plaintiff fail to proffer expert testimony concerning Publix, he neither took depositions of Publix witnesses nor sought Publix documents specific to this case. Tellingly, Plaintiff voluntarily dropped the three other *diverse* retailer defendants initially named in the case despite Decedent verifying under oath that she purchased Zantac at those defendants' stores, yet he kept Publix as the only retailer defendant in the case to thwart diversity jurisdiction.

6. This removal is timely. The Removing Defendants are removing the case within 30 days of the deposition of the last of Plaintiff's causation experts to disclaim any opinion that Publix's alleged negligence caused Plaintiff's injury, which constituted an "other paper" first rendering removal proper. 28 U.S.C. § 1446(b)(3). Moreover, Plaintiff's tactics—failing to take discovery against Publix, disregarding his need to present expert testimony supporting those claims, and voluntarily dropping the diverse retailer defendants—shows that Plaintiff kept Publix in the case only as a ploy to defeat jurisdiction. The "bad faith" exception to the one-year bar on removal therefore applies. *See* 28 U.S.C. § 1446(c).

7. Accordingly, Publix is fraudulently joined and its citizenship can be ignored in assessing diversity jurisdiction.

8.     The Removing Defendants recognize that this action was previously removed and remanded.  But that removal was based on other grounds—that on the face of the pleadings, Publix was fraudulently joined because the negligence claim asserted against the retailer was preempted.  *See* Notice of Removal, V*aldes v. Boehringer Ingelheim Pharms., Inc.*, No. 1:21-cv-23711-RLR (S.D. Fla. Oct. 20, 2021) (ECF No. 1).  After the MDL court rejected the Removing Defendants' argument that preemption was a basis for removal in another case, *see In re Zantac (Ranitidine) Products Liability Litigation*, 2022 WL 708589, at *2 (Jan. 28, 2022), the Removing Defendants withdrew the Notice of Removal in this case and agreed to remand.  *See* Notice of Withdrawal of Defs.' Notices of Removal, In *re Zantac (Ranitidine) Prods. Liab. Litig.*, MDL No. 2924 (S.D. Fla. Mar. 1, 2022) (ECF No. 5356).  The prior removal and remand, thus, have no bearing on federal jurisdiction in this case, where it has become clear after the close of discovery that no valid claim is pleaded against the local retailer.

## VENUE AND JURISDICTION

9.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 89(c), 1391, 1441(a), and 1446(a), because the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, where the FAC was filed, is a court within the United States District Court for the Southern District of Florida.

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(b), because:  (1) there is complete diversity of citizenship between Plaintiff and all properly joined Defendants; (2) the amount-in-controversy exceeds $75,000.00, exclusive of interests and costs; and (3) all other requirements for removal have been satisfied.

**BASIS FOR REMOVAL**

## I.   THERE IS COMPLETE DIVERSITY BETWEEN PLAINTIFF AND ALL PROPERLY JOINED DEFENDANTS.

11.     There is complete diversity of citizenship between Plaintiff and all properly joined Defendants.

12.     "Decedent, Teresa Valdes, was at all times . . . a resident of Miami-Dade County, Florida." (FAC ¶ 2.)  Plaintiff brings this action as the personal representative of Decedent's estate and thereby stands in Decedent's shoes.  (*Id.* ¶ 5.)  As "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent," Plaintiff is a citizen of Florida for purposes of this action.  28 U.S.C. § 1332(c)(2).[1]

13.     For purposes of diversity jurisdiction, a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1); *see also WM Mobile Bay Env't Ctr., Inc. v. City of Mobile Solid Waste Auth.*, 672 F. App'x 931, 933 n.1 (11th Cir. 2016).  A limited liability company is a citizen of every state in which its members are citizens.  *Rolling Greens MHP, LP v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004).

14.     Defendant GlaxoSmithKline Holdings (America) Inc. is a corporation organized under the laws of Delaware with its principal place of business in Wilmington, Delaware.  (FAC ¶ 24.)  GlaxoSmithKline Holdings (America) Inc. is, therefore, a citizen of Delaware.

15.     Defendant GlaxoSmithKline LLC is a limited liability company organized under the laws of Delaware.  (*Id.* ¶ 23.)  Its sole member is GlaxoSmithKline Holdings (America) Inc.,

---

[1] Although diversity jurisdiction is determined based on Decedent's citizenship, Plaintiff is also a resident of Miami, Florida himself.  (Pl. Teresa Valdes's Objections & Answers to Def. Sanofi's First Set of Interrogs., at No. 25 (**Exhibit 2**).)

a corporation organized under the laws of Delaware with its principal place of business in Wilmington, Delaware. (*Id.* ¶¶ 23–24.) GlaxoSmithKline LLC is, therefore, a citizen of Delaware.

16.     Defendant Pfizer Inc. is a corporation organized under the laws of  Delaware with its principal place of business in New York, New York.  (*Id.* ¶ 19.)  Pfizer Inc. is, therefore, a citizen of Delaware and New York.

17.     Defendant Boehringer Ingelheim Pharmaceuticals, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Ridgefield, Connecticut.  (*Id.* ¶ 15.)  Boehringer Ingelheim Pharmaceuticals, Inc. is, therefore, a citizen of Delaware and Connecticut.

18.     Defendant Boehringer Ingelheim Corporation is a corporation organized under the laws of Nevada with its principal place of business in Ridgefield, Connecticut.  (*Id.* ¶ 16.) Boehringer Ingelheim Corporation is, therefore, a citizen of Nevada and Connecticut.

19.     Defendant Boehringer Ingelheim USA Corporation is a corporation organized under the laws of Delaware with its principal place of business in Ridgefield, Connecticut.  (*Id.* ¶ 17.)  Boehringer Ingelheim USA Corporation is, therefore, a citizen of Delaware and Connecticut.

20.     Defendant Sanofi US Services Inc. is a corporation organized under the laws of Delaware with its principal place of business in New Jersey.  (*Id.* ¶ 21.)  Sanofi US Services Inc. is, therefore, a citizen of Delaware and New Jersey.

21.     Defendant Sanofi-Aventis U.S. LLC is a limited liability company organized under Delaware law.  (*Id.* ¶ 20.)  The sole member of Sanofi-Aventis U.S. LLC is Sanofi US Services Inc., a Delaware corporation with its principal place of business in New Jersey.  (*Id.* ¶¶ 20–21.) Defendant Sanofi-Aventis U.S. LLC is, therefore, a citizen of Delaware and New Jersey.

22.     Because Plaintiff is a citizen of Florida and all properly joined defendants are citizens of states other than Florida, complete diversity of citizenship exists.  *See* 28 U.S.C. §§ 1332, 1441.

## II.     PUBLIX IS FRAUDULENTLY JOINED

23.     "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).  A nondiverse defendant is fraudulently joined where "'there is no possibility that the plaintiff can prove a cause of action against' [that] defendant." *Illoominate Media, Inc. v. CAIR Fla., Inc.*, 841 F. App'x 132, 134 (11th Cir. 2020) (citation omitted).  When a claim of fraudulent joinder is "based on lack of evidence, a plaintiff . . . must be able to provide some showing that her claim against the [non-diverse] defendant has evidentiary support." *Sellers v. Foremost Ins. Co.*, 924 F. Supp. 1116, 1119 (M.D. Ala. 1996).

24.     The Eleventh Circuit, moreover, has explained in assessing jurisdiction that a plaintiff must have a "real intention to get a [] judgment" against the non-diverse party. *Triggs*, 154 F.3d at 1291.

25.     Here, Plaintiff alleges only a single claim against Publix for "negligence in shipping, transporting, distributing, and storing OTC Zantac" (FAC ¶ 262), and that "[a]s a direct and proximate result of the negligence and conduct of Publix . . . Decedent developed prostate cancer and the injuries alleged herein." (*Id.* ¶ 297.)

26.     Plaintiff cannot succeed on this claim for the reasons stated below.  Publix is therefore fraudulently joined and its Florida citizenship should be ignored for purposes of removal.

A. **Plaintiff Has No Expert Testimony to Support a Negligence Claim Against Publix.**

27.     Florida law requires expert testimony to prove causation in cases like this, "where a jury is asked to assess complex medical or scientific issues outside the scope of a layperson's knowledge." *McCasland v. Pro Guard Coatings, Inc.*, 799 F. App'x 731, 733 (11th Cir. 2020) (addressing Florida law); *id.* at 733–34 (affirming summary judgment for defendant manufacturer, including on negligence claim, because plaintiff "failed to offer any expert testimony to establish . . . that [the product] did in fact cause his medical condition"); *Marking v. Novartis Pharms. Corp.*, 2002 WL 32255405, at *3 (S.D. Fla. Feb. 12, 2002) ("Plaintiffs are required to introduce expert testimony to establish medical causation.") (applying Florida law); *Marshick v. Johnson & Johnson*, 2015 WL 9266955, at *3 (M.D. Fla. Dec. 11, 2015) ("[Plaintiff] must have expert testimony on medical causation or her claims will fail.") (applying Florida law).

28.     Plaintiff's deadline to disclose experts fell on November 1, 2023.  On that date, Plaintiff disclosed three experts to testify as to causation:  Drs. Jack Goldberg, Steven B. Bird, and Nagi B. Kumar.  On December 4, December 11, and December 13, 2023, the Removing Defendants deposed Drs. Goldberg, Bird, and Kumar, respectively.  Each expert affirmatively *disclaimed* having any causation opinion with respect to Publix.

29.     Dr. Goldberg testified:

> Q:     Dr. Goldberg, are you offering any opinions in this case with respect to any action or inaction by Publix Super Markets?
>
> A:     No, I am not.
>
> Q:     Have you formed any such opinions?
>
> A:     I have not.

(Goldberg Tr. at 246:15–20.)

30.     Dr. Bird testified:

> Q:   Are you offering any opinions in this case with respect to any action or inaction by Publix Super Markets?
>
> A:   No, I am not.
>
> Q:   You have formed any such opinions?
>
> A:   I have not.

(Bird Rough Tr. at 233:15–21.)

31.   And Dr. Kumar testified:

> Q:   Are you offering any opinions in this case with respect to any action or inaction by Publix Supermarkets?
>
> A:   Not specifically.
>
> Q:   Excuse me?
>
> A:   Not  specifically.
>
> Q:   Are you offering opinions generally?
>
> A:   Yes, correct.
>
> Q:   What opinions are you offering with respect to Publix supermarkets?
>
> A:   ***None***, none from the customer service or any such thing. ***No, not specifically at all***.

(Kumar Rough Tr. at 428:20–429:6) (relevant pages of transcripts collectively attached as **Exhibit 3**) (emphases added).

32.   Plaintiff is thus left without any expert to testify that Publix's alleged negligence caused NDMA to form in the Zantac Decedent allegedly ingested; that such NDMA was formed in sufficient quantity to cause her cancer; or that Publix's conduct was responsible for her alleged injuries.  Without that expert testimony, Plaintiff cannot establish a negligence claim and recover against the retailer.  *See, e.g.*, *Webster v. Martin Mem'l Med. Ctr., Inc.*, 2009 WL 7770772 (Fla. Cir. Ct. May 14, 2009) (granting summary judgment because "Plaintiffs' own experts' testimony

shows that they simply cannot prove the causation element of this case"); *Marking*, 2002 WL 32255405, at *3 ("Summary judgment has been granted when . . . the plaintiff is left with no expert on which to rely for medical causation."); *cf. Bennett v. Ford Motor Co.*, 2007 WL 4561281, at *3 (W.D. Ky. Dec. 21, 2007) (finding fraudulent joinder when "[p]laintiffs have not put forth any facts supporting the claim against the nondiverse defendant . . . . The record reveals little attempt, if any, to develop a case against [the nondiverse defendant]").

33. While Plaintiff's failure to designate the required expert testimony is alone dispositive, he has also failed to develop any factual record that could support a viable negligence claim against Publix for storage and transport. *See infra* ¶¶ 37-40.

34. Consequently, Publix has been fraudulently joined and its citizenship must be ignored for purposes of removal.

**B.    Plaintiff Has No Real Intent to Pursue the Negligence Claim Against Publix.**

35. "Where common sense leads the court to strongly doubt that plaintiff has a real intention in good faith to seek a judgment against [a] defendant[], joinder of th[at] defendant[] is fraudulent." *Diaz v. Kaplan Univ.*, 567 F. Supp. 2d 1394, 1403 (S.D. Fla. 2008) (quotations omitted); *Triggs*, 154 F.3d at 1291 (a plaintiff should have an "intent to pursue a judgment against the defendant"); *see also In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 220 F. Supp. 2d 414, 422 (E.D. Pa. 2002) ("[W]e are constantly telling jurors that they must not leave their 'common sense' outside the courtroom when weighing evidence. We too must follow our own advice."). In conducting this analysis, courts can consider "significant circumstantial evidence." *Diaz*, 567 F. Supp. 2d at 1403.

36. Courts in other pharmaceutical product liability actions, for example, have found fraudulent joinder based on a failure to prosecute where the plaintiff did not conduct meaningful

discovery against the non-diverse defendant.  *See, e.g.*, *In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*, 257 F. Supp. 3d 717, 720–21 (E.D. Pa. 2017) (denying remand where none of the plaintiffs "propounded meaningful discovery on [non-diverse]" distributor); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 2014 WL 2011597, at *3 (E.D. Pa. May 15, 2014) (finding fraudulent joinder because, although plaintiffs propounded some discovery on the non-diverse distributor McKesson, those requests would "not generate any information about the Avandia distribution process"—information plaintiffs would need to survive a motion for summary judgment by McKesson); *In re Diet Drugs*, 220 F. Supp. 2d at 421 (denying remand where "no depositions of any witnesses affiliated with [non-diverse] defendant [were] taken").

37.     Here, not only has Plaintiff failed to designate any expert witness to testify that Publix's alleged negligence caused Decedent's injuries, *see supra* ¶¶ 28–32, he has failed to take any case-specific discovery to support a negligence claim against Publix.

38.     In the Zantac MDL, the plaintiffs filed a master complaint, which among other things, asserted a negligent storage and transport claim against various retailers of ranitidine.  The MDL court dismissed that claim without prejudice as inadequately pleaded in December 2020, expressing skepticism about whether plaintiffs could "plead in good faith that any Defendant had a *policy* to store ranitidine products at temperatures above those approved by the FDA" and noting that whether "*individual* stores negligently stored ranitidine at unsafe, heated temperatures . . . [is an] ***individualized and fact-specific***" inquiry.  *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 510 F. Supp. 3d 1234, 1256 (S.D. Fla. 2020) (last emphasis added).

39.     The MDL plaintiffs then re-pleaded their claim for negligent storage and transport against the retailer defendants after an opportunity for discovery—but the MDL court dismissed those claims again.  *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2021 WL 2685605 (S.D. Fla.

June 30, 2021).  The MDL court explained that "pursuant to the [Food, Drug, and Cosmetic Act] through the [US Pharmacopeia], it is lawful for a room-temperature drug to be subject to elevated temperatures, within certain limitations," and that plaintiffs' general allegations of not controlling the temperature of ranitidine shipments did not "plausibly suggest a Defendant violated a duty of care."  *Id*. at *8.  The MDL plaintiffs likewise did not plead any individualized facts, such as a claim that "one-off trucks or retail stores" improperly shipped or stored ranitidine.  *Id*.

40.     Despite the MDL plaintiffs' failed attempt to establish claims against retailers, Plaintiff in this case made no effort to develop his own viable negligence case against Publix.  Fact discovery closed on November 30, 2023 without Plaintiff taking additional discovery beyond that in the MDL.  Plaintiff never sought depositions of any Publix witnesses.  Nor did Plaintiff seek any individualized, case-specific discovery about the ranitidine-containing products Decedent allegedly purchased from Publix.  Plaintiff did not, for example, request information about the individual Publix stores where Decedent allegedly made such purchases, which Publix warehouses shipped to those stores, or the conditions of the trucks in that specific supply chain.  Plaintiff propounded only limited written discovery, which Publix answered by pointing to documents produced and depositions taken in the MDL.  Plaintiff did not follow up to ask for additional documents.

41.     In addition to Plaintiff's failure to develop any evidence to support his claim against Publix, Plaintiff's conduct with respect to other diverse retailers demonstrates that Plaintiff fraudulently named Publix solely to defeat diversity jurisdiction.  Decedent originally filed this action against the Removing Defendants, non-diverse retailer Publix, and three diverse retailers CVS Pharmacy, Inc., Walgreen Co., and Wal-Mart Inc. f/k/a Walmart Stores, Inc.  (*See* Compl. ¶¶ 20, 22–23 (**Exhibit 4**).)  Decedent verified under oath that she purchased ranitidine from ***all***

*four* retailers.[2]   Yet Plaintiff voluntarily dismissed the negligence claims as to CVS Pharmacy, Inc., Walgreen Co., and Wal-Mart Inc. by declining to name them in the FAC.  (*See* FAC ¶¶ 15– 26) (identifying defendants).  Plaintiff left in Publix as the *only* retailer (*id.*), in an obvious effort to destroy diversity.

42.   Because Plaintiff's failure to prosecute his case against Publix demonstrates he never intended to seek a judgment against the retailer, Publix is fraudulently joined, and its citizenship must be ignored.

## III.   THE AMOUNT-IN-CONTROVERSY REQUIREMENT IS MET.

43.   The FAC satisfies the amount-in-controversy requirement set forth in 28 U.S.C. § 1332(a).

44.   Plaintiff alleges an amount-in-controversy that is "in excess of $30,000.00, exclusive of interest, costs, and attorneys' fees."  (FAC ¶ 1.)

45.   Where the complaint does not establish a specific amount in controversy, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014); *Roe v. Michelin N. Am., Inc*., 613 F.3d 1058, 1061–62 (11th Cir. 2010) ("[I]t may be 'facially apparent' from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, even when 'the complaint does not claim a specific amount of damages.' . . . If a defendant alleges that removability is apparent from the face of a complaint, the district court . . . [may] make 'reasonable deductions, reasonable inferences, or other reasonable

---

[2] (*See, e.g.*, Pl. Teresa Valdes' Objections & Answers to Def. Sanofi's First Set of Interrogs., at No. 7) (**Exhibit 2**) ("I bought Zantac from CVS, Walmart, Walgreens and Publix Super Markets in Hialeah, Kendall and Miami, Florida to treat/relieve heartburn.").

extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable." (citations omitted)).

46.     Federal courts routinely find that the amount-in-controversy requirement is satisfied where, as here, a plaintiff alleges serious bodily injury or death. *See, e.g.*, *Robertson v. Exxon Mobil Corp*., 814 F.3d 236, 241 (5th Cir. 2015) (holding that serious medical injuries alleged, including cancer, supported deduction that amount-in-controversy requirement was met); *Gates v. 84 Lumber Co*., 2015 WL 2345427, at *1 (S.D. Ala. May 14, 2015) (inferring that amount-in-controversy requirement was met when alleged injury included cancer); *Mullaney v. Endogastric Sols., Inc*., 2011 WL 4975904, at *2 (S.D. Fla. Oct. 19, 2011) (same).

47.     Jury awards in Florida involving similar allegations and injuries likewise have exceeded the jurisdictional threshold. *See, e.g.*, *Mills v. Volkswagen Grp. of Am., Inc.*, 2023 WL 7383265 (Fla. Cir. Ct. June 8, 2023) (alleging cancer from exposure to asbestos and recovering more than $7 million in compensatory damages); *Moure-Cabrera v. Johnson & Johnson Consumer Inc.*, 2020 WL 2113538 (Fla. Cir. Ct. Feb. 27, 2020) (alleging cancer from use of talc products and recovering $9 million in compensatory damages).

48.     Moreover, in another Zantac-related case alleging cancer as an injury, a federal court in the District of Nevada denied a motion to remand where the amount-in-controversy was not alleged, because the requirement was satisfied on the face of the complaint by the nature of the injury. *See Brooks v. Sanofi, S.A.*, 2020 WL 1847682, at *4 (D. Nev. Apr. 13, 2020); *cf. Gates*, 2015 WL 2345427, at *1 (inferring that the amount-in-controversy requirement was met when the alleged injury included cancer).

49.     Finally, in the hundreds of personal injury cases in the Zantac MDL, each plaintiff either expressly claims damages in excess of $75,000.00 or has impliedly done so by filing a

lawsuit in federal court and invoking federal diversity jurisdiction.  Numerous plaintiffs in these cases allege that they have been diagnosed with colorectal cancer, the same type of cancer alleged in the FAC.  *See, e.g.*, *Hall et al. v. Sanofi S.A. et al.,* 9:21-cv-81606 (alleging colorectal cancer that resulted in unspecified damages); *Farino et al. v. GlaxoSmithKline LLC et al.,* 9:21-cv-82339 (alleging colorectal cancer that resulted in unspecified damages).

50.     Here, the FAC alleges that, because of Decedent's use of Zantac, "Decedent developed colorectal cancer and was injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to past and future medical expenses, lost income, and other damages."  (FAC ¶ 209.) Plaintiff further alleges that Decedent's injuries led to her death (*id.* ¶ 14), and asserts a claim for wrongful death (*id.* ¶¶ 299-313).  The FAC seeks compensatory damages, statutory damages, and attorney's fees.  (*See id.* at Prayer for Relief.)

51.     Although Removing Defendants deny that Plaintiff is entitled to any damages, it is facially apparent from the allegations in the FAC that the amount-in-controversy exceeds $75,000.00.

## IV.   THIS REMOVAL IS TIMELY.

### A.   Defendants Removed the Action Within 30 Days of an "Other Paper."

52.     This action is being removed "within thirty days after receipt by [Removing Defendants] . . . of a copy of an . . . other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).

53.     "The Eleventh Circuit has recognized that deposition testimony qualifies as 'other paper' within the meaning of 28 U.S.C. § 1446(b)(3)."  *Owoc v. LoanCare, LLC*, 524 F. Supp. 3d

1295, 1302 n.5 (S.D. Fla. 2021); *Bioresource Tech., Inc. v. High*, 2021 WL 9347053, at *2 (S.D. Fla. Nov. 22, 2021) ("'Other paper' includes . . . deposition testimony.").

54.     The last of Plaintiff's experts, Dr. Kumar, was deposed on December 13, 2023. There—like the depositions of Plaintiff's other medical experts—Dr. Kumar conceded that she has no causation opinions with respect to Publix. *See supra* ¶ 31. Upon this concession, the Removing Defendants were first aware that Plaintiff was without ***any*** expert evidence to support his negligence claim against Publix, which, taken together with the lack of any factual support, demonstrated that Plaintiff had no viable negligence claim against Publix. This removal is timely because it is being filed within 30 days of Dr. Kumar's deposition.

## B.     Plaintiff Acted in Bad Faith to Prevent Removal.

55.     The one-year removal bar for diversity actions also does not apply here because Plaintiff "has acted in bad faith in order to prevent [the Removing] [D]efendant[s] from removing the action." 28 U.S.C. § 1446(c); *see De Zarraga v. Scottsdale Ins. Co.*, 2021 WL 5979359, at *3 (S.D. Fla. Dec. 17, 2021) (denying remand in post-one year removal where plaintiff engaged in the "bad faith gamesmanship that the federal removal statute seeks to prevent").

56.     To determine if a plaintiff acted in bad faith, courts often apply a two-step test. First, the court considers whether the plaintiff has "actively litigated against the removal-spoiling defendant . . . [*e.g.*,] taking discovery, negotiating settlement, seeking default judgments . . . . If the plaintiff did not actively litigate against the removal spoiler, then bad faith is established; if the plaintiff actively litigated against the removal spoiler, then good faith is rebuttably presumed." *Holland v. CSX Transp., Inc.*, 2021 WL 4448305, at *3 (S.D. W.Va. Sept. 28, 2021) (citing *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1263 (D.N.M. 2014)). Second, the defendant can "rebut the good-faith presumption with direct evidence of the plaintiff's subjective bad faith." *Id.*

57.     Courts therefore have repeatedly found that the bad-faith exception applies where a plaintiff has not actively litigated claims against the diversity-destroying defendant.  For example, in *Keller Logistics Group, Inc. v. Navistar, Inc.*, 391 F. Supp. 3d 774, 776 (N.D. Ohio 2019), the plaintiffs purchased or leased dozens of commercial trucks.  When the trucks broke down, the plaintiffs sued the truck manufacturer and dealer.  *Id.*  In concluding that the plaintiff had engaged in bad faith in keeping the non-diverse dealer in the case for more than a year, the court looked to, among other things, the plaintiffs' failure to develop a factual record in support of his claims as compared to the diverse defendants:  "Plaintiffs did not depose any Dealer employee or representative.  While Plaintiffs issued 279 requests for production to [the truck manufacturer], they issued only thirty-four requests to the Dealer.  And many of those thirty-four requests targeted evidence of [the manufacturer's] behavior, not that of the Dealer."  *Id.* at 779; *see also* 11/8/2023 Order Denying Mot. to Remand, *In re Roundup Prods. Liab. Litig. (Mistich)*, MDL No. 2741, at 2–3 (N.D. Cal. Nov. 8, 2023) (**Exhibit 5**) (finding bad faith where plaintiff did not follow up when written discovery went unanswered and made no "attempt to depose anyone from [non-diverse defendant]"); *McNeal v. Found. Radiology Grp., P.C.*, 2022 WL 3010694, at *3 (E.D. Mich. July 29, 2022) (finding bad faith where "Plaintiff took little discovery from [the non-diverse defendant] and the discovery that it did take focused almost exclusively on [another defendant's] conduct").

58.     Similarly here, Plaintiff took no case-specific depositions of Publix.  None of the written discovery propounded concerned facts specific to Plaintiff's claim, *e.g.*, the Publix stores that sold Decedent the ranitidine-containing products she allegedly used, Decedent's purchase history, or the Publix warehouses or trucks that supplied those stores.  Instead, Plaintiff relies entirely on the (failed) generalized discovery conducted in the Zantac MDL.  In answering

Plaintiff's generalized discovery requests, Publix referred Plaintiff back to discovery done in the Zantac MDL.  Plaintiff never followed up with additional requests.

59.     Most critically, when it came time to disclose experts, Plaintiff proffered no expert to support his negligence claim against Publix.  None of Plaintiff's disclosed experts opines that Publix's alleged negligent storage or transport caused NDMA to develop in Decedent's Zantac or caused Decedent's cancer.  Nor do any of Plaintiff's experts opine that Publix was negligent in storing or transporting ranitidine-containing products, for example by violating any regulatory requirements.  *See In re Propulsid Prods. Liab. Litig*., 2007 WL 1668752, at *1 (E.D. La. June 6, 2007) (denying motion to remand where "[p]laintiff never identified any experts to offer opinions against [the non-diverse defendant healthcare providers]"); *Davis v. Merck & Co*., 357 F. Supp. 2d 974, 978–79 (E.D. Tex. 2005) (denying motion to remand where plaintiff failed to file a required expert report against a non-diverse defendant).  To the contrary, Plaintiff's experts expressly disclaimed any opinion as to Publix's conduct in this case.  *See supra* ¶¶ 29-31.

60.     Finally, there is direct evidence of Plaintiff's bad faith in preventing removal.  As explained above, *see supra* ¶ 39, Plaintiff voluntarily dropped all claims against the diverse retailers, leaving only Publix as the sole diversity-spoiling defendant.  There can be no explanation for this conduct other than Plaintiff's subjective bad faith in naming Publix solely to defeat diversity jurisdiction.

## V.     ALL OTHER REQUIREMENTS FOR REMOVAL ARE SATISFIED.

61.     Removal pursuant to 28 U.S.C. § 1441(a) requires that "all defendants who have been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A).  The Removing Defendants all consent to removal.  "A fraudulently joined

defendant [like Publix] need not consent to removal." *Vestal v. First Recover Grp., LLC*, 292 F. Supp. 3d 1304, 1309 (M.D. Fla. 2018).

62.     The Removing Defendants are providing Plaintiff with written notice of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d).

63.     Pursuant to 28 U.S.C. § 1446(d), the Removing Defendants are filing a copy of this Notice of Removal with the clerk of the Circuit Court of the Eleventh Judicial District in and for Miami-Dade County, Florida.

64.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other papers filed in the state court action—as available from the state court docket or otherwise made available to the Removing Defendants at the time of filing this Notice—are attached hereto as **Exhibit 6**.

65.     If any questions arise regarding the propriety of the removal to this Court, the Removing Defendants request the opportunity to present a brief and be heard at oral argument in support of removal.

66.     The Removing Defendants hereby demand a jury trial on all claims and issues so triable.

WHEREFORE, the Removing Defendants hereby remove this action from the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida to the United States District Court for the Southern District of Florida, Miami Division.

Dated: December 14, 2023

Respectfully submitted,

**JONES FOSTER P.A.**

*/s/ Joanne M. O'Connor*
Joanne M. O'Connor (FBN 498807)
joconnor@jonesfoster.com
Flagler Center Tower
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida, 33401
T: (561) 659-3000
F: (561) 650-5300
*Attorney for Defendants Sanofi US Services Inc.*
*and Sanofi-Aventis U.S. LLC*

**ARNOLD & PORTER KAYE SCHOLER LLP**

Angelique A. Ciliberti (*pro hac vice*)
angelique.ciliberti@arnoldporter.com
Kevin A. Cline (*pro hac vice*)
kevin.cline@arnoldporter.com
Erica E. McCabe (*pro hac vice*)
erica.mccabe@arnoldporter.com
Jocelyn A. Wiesner (*pro hac vice*)
jocelyn.wiesner@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Tel. (202) 942-6821
Fax (202) 942-6572
Skylar Williams (*pro hac vice*)
skylar.williams@arnoldporter.com
44th Floor 777 South Figueroa Street
Los Angeles, CA 90017-5844
Tel. (213) 243-4298
Fax (213) 243-4199
*Attorneys for Defendants Sanofi US Services Inc.*
*and Sanofi-Aventis U.S. LLC*

**STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.**

 */s/ Jay B. Shapiro*
Jay B. Shapiro (FBN: 776361)
Alejandro D. Rodríguez (FBN: 124493)
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Tel: 305.789.3229
Email: jshapiro@stearnsweaver.com
Email: arodriguez@stearnsweaver.com
Email: mperez@stearnsweaver.com


**WILLIAMS & CONNOLLY LLP**

Annie E. Showalter (*pro hac vice*)
ashowalter@wc.com
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Emma J. Nino (*pro hac vice*)
enino@wc.com
680 Maine Avenue SW
Washington, DC 20024
Tel: 202.434.5000

*Attorneys for Defendant Pfizer Inc.*

**NELSON MULLINS**

 */s/ Mark F. Raymond*
Mark F. Raymond (FBN: 373397)
Francisco Armada (FBN: 45291)
2 South Biscayne Blvd.
One Biscayne Tower, 21st FL
Miami, FL 33131
Tel: 305.373.9425
Email: mark.raymond@nelsonmullins.com
Email: stacy.smith@nelsonmullins.com
Email: francisco.armada@nelsonmullins.com
Email: marisa.armas@nelsonmullins.com

**DECHERT, LLP**

Lindsey B. Cohan (*pro hac vice*)

515 Congress Avenue, Suite 1400
Austin, Texas 78701
Tel: 512.394.3000
Email: lindsey.cohan@dechert.com

**SHOOK, HARDY & BACON**

Thomas J. Sheehan (*pro hac vice*)
1 Seneca Street, 29th Floor
Buffalo, New York  14203
Email: tjsheehan@shb.com

*Attorneys for Defendant GlaxoSmithKline LLC,*
*GlaxoSmithKline Holdings (Americas) Inc.*

**KING & SPALDING LLP**

*/s/ Ursula M. Henninger*
Ursula M. Henninger (FBN: 0801631)
Southeast Financial Center
200 S. Biscayne Boulevard Suite 4700
Miami, Florida 33131
Tel: 404.572.4600;
Fax: 404.572.5100
Email: uhenninger@kslaw.com
Corinne Nabors (*pro hac vice*)
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Email: cnabors@kslaw.com
Eva Canaan (*pro hac vice*)
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Email: ecanaan@kslaw.com

*Attorney for Defendants Boehringer Ingelheim*
*Pharmaceuticals, Inc., Boehringer Ingelheim*
*Corporation, and Boehringer Ingelheim USA*
*Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on December 14th, 2023, I electronically filed the foregoing document

with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served

this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

By:/s/ Joanne M. O'Connor

Joanne M. O'Connor

**VALDES v BOEHRINGER ET AL.**

**SERVICE LIST**

| | |
|---|---|
| Justin Parafinczuk, Esquire<br>Parafinczuk Wolf<br>Town Centre<br>5550 Glades Road, Suite 500<br>Boca Raton, FL  33431<br>JParafinczuk@Parawolf.com<br>ZantacLitigation@ParaWolf.com<br>*Attorneys for Plaintiff*<br><br>John Bruegger, Esq.<br>Steven D. Resnick, Esq.<br>Parafinczuk Wolf<br>9050 Pine Boulevard, Suite 450-02<br>Pembroke Pines, FL 33024<br>jbruegger@parawolf.com<br>sresnick@parawolf.com<br>*Attorneys for Plaintiff*<br><br>Jason Richards, Esq.<br>Alystock, Witkin, Kreis & Overholtz, PLLC<br>17 East Main Street, Suite 200<br>Pensacola, FL 32502<br>jrichards@awkolaw.com<br>*Attorneys for Plaintiff*<br><br>Sarah E. Johnston, Esq.<br>Barnes & Thornburg LLP<br>2029 Century Park East, Suite 300<br>Los Angeles, CA 90067<br>sjohnston@btlaw.com<br>*Attorneys for Publix Super Markets*<br><br>Julia Stepanova, Esq.<br>Barnes & Thornburg LLP<br>4540 PGA Boulevard, Suite 208<br>Palm Beach Gardens, FL 33418<br>Julia.stepanova@btlaw.com<br>Robyn.maguire@btlaw.com<br>*Attorneys for Publix Super Markets* | Ursula M. Henninger, Esquire<br>Val Leppert, Esquire<br>King & Spaulding, LLP<br>200 South Biscayne Boulevard<br>Suite 4700<br>Miami, Florida 33131<br>uhenninger@kslaw.com<br>vleppert@kslaw.com<br>zantacfl@kslaw.com<br>*Attorneys for Defendants BIPI, BI*<br>*Corporation and BI USA Corporation*<br><br>Patrick Price, Esquire<br>King & Spaulding, LLP<br>500 West Second Street<br>Suite 1800<br>Austin, TX  78701<br>pprice@kslaw.com<br>zantacfl@kslaw.com<br>*Attorneys for Defendants BIPI, BI*<br>*Corporation and BI USA Corporation*<br><br>Andrew T. Bayman<br>Robert B. Friedman<br>Carmen Toledo<br>KING & SPALDING LLP<br>1180 Peachtree Street, NE, Suite 1600<br>Atlanta, GA 30309-3521<br>abayman@kslaw.com<br>rfriedman@kslaw.com<br>ctoledo@kslaw.com<br>*Attorneys for Defendants Boehringer*<br>*Ingelheim*<br>*Pharmaceuticals, Inc., Boehringer Ingelheim*<br>*Corporation, and Boehringer Ingelheim USA*<br>*Corporation*<br><br>Julia Zousmer<br>KING & SPALDING LLP<br>110 N Wacker Drive, Suite 3800<br>Chicago, IL 60606<br>jzousmer@kslaw.com |

Jay B. Shapiro, Esq.
Alejandro D. Rodriguez, Esq.
Stearns Weaver Miller, et al.
150 West Flagler Street, Suite 2200
Miami, Florida 33130
jshapiro@stearnsweaver.com
arodriguez@stearnsweaver.com
*Attorneys for Defendant Pfizer Inc.*

Thomas G. Aubin, Esq.
Stearns Weaver Miller, et al.
200 East Las Olas Boulevard
Suite 2100
Fort Lauderdale, Florida  33301
taubin@stearnsweaver.com
*Attorneys for Defendant Pfizer Inc.*

M. Elaine Horn, Esq.
Angela Pyo, Esq.
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20005
ehorn@wc.com
apyo@wc.com
*Attorneys for Defendant Pfizer Inc.*

Katelyn E. Marshall, Esquire
King and Spalding, LLC
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309
kmarshall@kslaw.com
*Attorneys for Defendants BIPI, BI
Corporation and BI USA Corporation*

Eva Canaan, Esquire
King & Spalding LLP
1185 Avenue of the Americas
34th Street
New York, NY 10036-2601
ecanaan@kslaw.com
*Attorneys for Defendants BIPI, BI
Corporation and BI USA Corporation*

*Attorneys for Defendants Boehringer
Ingelheim
Pharmaceuticals, Inc., Boehringer Ingelheim
Corporation, and Boehringer Ingelheim USA
Corporation*

Joanne M. O'Connor, Esq.
Jones Foster P.A.
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33401
joconnor@jonesfoster.com
*Attorneys for Defendants, Sanofi US
Services Inc. and Sanofi-Aventis U.S. LLC*

Mohamed Al-Hendy, Esq.
Jocelyn Wiesner, Esq.
Arnold and Porter
700 Louisiana Street | Suite 4000
Houston, TX 77002-2755
mohamed.al-hendy@arnoldporter.com
jocelyn.wiesner@arnoldporter.com
*Attorneys for Defendants, Sanofi US
Services Inc. and Sanofi-Aventis U.S. LLC*

Angelique Ciliberti, Esq.
Arnold & Porter
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
angelique.ciliberti@arnoldporter.com
*Attorneys for Defendants, Sanofi US
Services Inc. and Sanofi-Aventis U.S. LLC*

E. Alex Beroukhim, Esq.
Skylar Williams, Esq.
Arnold & Porter Kaye Scholer LLP
44th Floor, 777 South Figueroa Street
Los Angeles, CA 90017.
alex.beroukhim@arnoldporter.com
skylar.williams@arnoldporter.com
*Attorneys for Defendants, Sanofi US
Services Inc. and Sanofi-Aventis U.S. LLC*

| | |
|---|---|
| Samuel Lonergan, Esq.<br>Arnold & Porter<br>250 West 55th Street,<br>New York, NY 10019-9710<br>samuel.lonergan@arnoldporter.com<br>*Attorneys for Defendants, Sanofi US*<br>*Services Inc. and Sanofi-Aventis U.S. LLC* | Mark F. Raymond, Esq.<br>Nelson Mullins<br>2 South Biscayne Blvd., 21st Fl.<br>Miami, FL 33131<br>Mark.raymond@nelsonmullins.com<br>*Attorneys for Defendant GlaxoSmithKline*<br>*LLC, GlaxoSmithKline Holdings (Americas)*<br>*Inc.* |
| Erik Snapp, Esq.<br>Dechert LLP<br>35 W Wacker Drive, Suite 3400<br>Chicago, IL 60601<br>erik.snapp@dechert.com<br>sarah.taylor@dechert.com<br>rachel.leary@dechert.com<br>*Attorney for Defendants GlaxoSmithKline*<br>*LLC and GlaxoSmithKline Holdings*<br>*(Americas) Inc.* | Lindsey B. Cohan. Esq. (pro hac vice<br>forthcoming)<br>Dechert LLP<br>515 Congress Avenue, Suite 1400<br>Austin, Texas 78701<br>lindsey.cohan@dechert.com<br>*Attorneys for Defendant GlaxoSmithKline*<br>*LLC, GlaxoSmithKline Holdings (Americas)*<br>*Inc.* |